629 So.2d 1322 (1993)
PLAQUEMINES PARISH COUNCIL and the Plaquemines Parish Port, Harbor and Terminal District
v.
Luke A. PETROVICH.
No. 92-CA-2579.
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1993.
*1323 Stewart E. Niles Jr., Edward H. Bergin, Gary H. Miller, Joan Winters Burmaster, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for plaintiffs/appellants.
Salvador Anzelmo, Patrick Fanning, Thomas W. Milliner, Bruce E. Naccari, New Orleans, for defendant/appellant.
Before WARD, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
Plaintiffs, the Plaquemines Parish Council and the Plaquemines Parish Port, Harbor and Terminal District, appeal a trial court judgment dismissing their petitions for writs of quo warranto and mandamus, and denying them relief, in part, requested under the Public Records Law, La.R.S. 44:1, et seq. Defendant, Luke Petrovich, appeals a portion of the judgment finding that he violated the Public Records Law.
This appeal arises out of a dispute between the Plaquemines Parish Council (the "Council") and Luke Petrovich, the Plaquemines Parish President, concerning control over the operation of the Plaquemines Parish Port, Harbor and Terminal District (the "Port District"). Plaquemines Parish has been governed under a Charter for Local Self-Government (the "Charter") since January 1, 1987. The Charter set up a President-Council form of government. The Port District was originally created as the Plaquemines Parish Port Authority by the Louisiana Legislature in 1954. La.R.S. 34:1351. At that time Plaquemines Parish operated under a police jury form of government. Therefore, La.R.S. 34:1352 declared the "governing authority" of the Port Authority to be the police jury.
In 1970, R.S. 34:1351 was amended to change the name of the Port Authority to the Plaquemines Parish Port, Harbor and Terminal District. At the same time, following a change to a Commission Council form of government, R.S. 34:1352 was amended to declare that the "governing authority" of the Port District was the Plaquemines Parish Commission Council. The Commission Council form of government ended when the Charter took effect on January 1, 1987. The Charter provided for a transfer of all jurisdiction, powers, rights, privileges and authority previously vested in the Police Jury and the Commission Council to the "Parish Government." The Parish Government consists of an elected Council and Parish President. Article 1, § 1.01 of the Charter states that the Council is the "governing authority."
Beginning in October 1991 the Council began to pass resolutions and ordinances dealing with the Port District, which Mr. Petrovich would subsequently veto. The Council would then override the vetoes. The Council and Mr. Petrovich continued to clash over control of the Port District. In March 1992 the Council filed a Petition for writ of quo warranto, mandamus, and preliminary injunction, seeking to have the court direct Mr. Petrovich (1) to show cause upon what authority he claims to act or exercise any governing authority or other powers over the Port District; (2) to order him to abide by *1324 the Charter and cease violating it and ordinances relating to the Port District passed by the Council; and (3) to show cause why an injunction should not issue enjoining him from taking any actions to disrupt the day-to-day operations of the Port District, advertising to hire employees for the Port District, violating Ordinances passed by the Council, etc.
In April 1992 six of the nine members on the Council each submitted forty-nine requests to Mr. Petrovich to view public records pursuant to the Public Records Law, La.R.S. 44:1, et seq. According to the Council members, they were never given the opportunity to inspect the records and Mr. Petrovich failed to respond to their requests as required by the Public Records Law. Subsequently, the Council amended their petition to allege a violation of the Public Records Law, and prayed for attorney's fees, penalties and damages pursuant to that statutory scheme.
Mr. Petrovich filed peremptory exceptions of no cause of action to plaintiffs' application for preliminary injunction and petition for writs of quo warranto and mandamus; peremptory exceptions of no right of action to the petition for quo warranto and request for relief under the Public Records Law, and a dilatory exception of lack of procedural capacity on the part of the Port District, a named plaintiff along with the Council. Mr. Petrovich also filed a reconventional demand seeking a declaratory judgment declaring certain ordinances and resolutions enacted by the Council null, void and of no effect and asking for preliminary and permanent injunctions against the Council's implementation of the ordinances and resolutions allegedly affecting administrative and executive matters. Plaintiffs filed exceptions of improper cumulation of actions and/or unauthorized use of summary proceedings as to defendant's reconventional demand.
Following trial, the court sustained defendant's exception of no cause of action to the application for preliminary injunction on the grounds that it only issued on a request for permanent injunction, which was an ordinary proceeding. The court also sustained plaintiffs' exception of improper cumulation of actions as to defendant's reconventional demand. The court denied defendant's exceptions of lack of procedural capacity of the Port District and no right of action to relief under the Public Records Law. Plaintiffs' petition for writs of mandamus and quo warranto was denied and dismissed. The court granted plaintiffs relief under the Public Records Law in part, denied it in part, and denied their request for attorney's fees and penalties under that statutory scheme.
Both plaintiffs and defendant have appealed. Plaintiffs claim (1) the trial court erred in finding that Mr. Petrovich, as Parish President, is the chief executive officer of the Port District and that the Council is precluded from exercising any executive power over the Port District; (2) alternatively, if such finding was correct, plaintiffs claim the trial court erred in failing to determine which powers were executive and which were legislative, and by failing to determine whether any of Mr. Petrovich's actions were "ultra vires" or otherwise illegal; (3) the trial court erred in finding that there had been no unreasonable problems relating to the management of the Port District since the inception of the Charter up to late 1991 or early 1992; and (4) the trial court erred in denying plaintiffs request for penalties and attorney's fees pursuant to the Louisiana Public Records Law, La.R.S. 44:1, et seq.
Defendants claim the trial court erred (1) in failing to sustain Mr. Petrovich's exception of no right of action as to the public records claim; and (2) in finding that Mr. Petrovich violated the Public Records Law.

THE CHARTER

The Charter provides in pertinent part:

ARTICLE 3

PARISH PRESIDENT
Section 3.01: Powers of President
The Parish President shall be the Chief Executive Officer of the Parish and shall have power, subject to this Charter and the Constitution of the State, to supervise and direct all activities and functions of Parish Government and provide administrative *1325 and logistical support to all other political subdivisions and districts therein as provided in this Charter and may delegate such authority to the offices and agencies of the Parish as hereinafter provided.
* * * * * *
Section 3.10: Duties of the President
The Parish President shall have the following duties:
* * * * * *
B. Exercise general oversight of the activities of boards, agencies, and special districts;
* * * * * *
E. Appoint and remove all administrative and executive officers and employees of the Parish, in accordance with the Parish Council adopted employment policies except for personal staff of the Council and its members, and any personal staff of the President. The personal staff of the President shall be appointed by and serve at the will of the President.
* * * * * *
J. Veto Ordinances and disapprove or reduce any item or items of appropriation, except:
* * * * * *
(4) Any item or items appropriated for or Ordinance involving the Plaquemines Parish Port, Harbor and Terminal District;
* * * * * *
ARTICLE 4
PARISH COUNCIL
Section 4.01: Legislative Powers
A. All legislative powers of the Parish of Plaquemines shall be vested in the Parish Council and exercised by it, subject to any applicable provisions of this Charter, and shall include, but not be limited to, the power to:
* * * * * *
(25) Provide for the employment of any employees and personnel which, in its judgment, may be necessary and proper to perform the work and carry out the duties and functions of Parish government and the conduct and operation of the other political subdivisions and districts situated within the Parish.
* * * * * *
(27) Serve as the sole governing authority for the Plaquemines Parish Port, Harbor and Terminal District.
* * * * * *
QUO WARRANTO
The trial court dismissed plaintiffs' petition for issuance of a writ of quo warranto, presumably by sustaining defendant's exception of no cause of action. La.C.C.P. art. 3901 defines quo warranto as:
Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or powers.
La.C.C.P. art. 3902 provides:
When the court finds that a person is holding or claiming office without authority, the judgment shall forbid him to do so. It may declare who is entitled to the office and may direct an election when necessary.
When the court finds that a corporation is exceeding its powers, the judgment shall prohibit it from doing so.
The writ of quo warranto is narrow in scope and is to be given only a limited use. Foreman v. Hines, 314 So.2d 460 (La.App. 4th Cir.1975); City of Plaquemine v. Medlen, 393 So.2d 301 (La.App. 1st Cir.1980).
There is no dispute that Mr. Petrovich lawfully holds the office of President of Plaquemines Parish. Although the Charter states that the Council is the "sole governing authority" of the Port District, it does not establish thereby, a position or office. The controversy, rather, involves the scope of the Parish President's powers over the control and operation of the Port District. The powers are set out, some specifically, some generally, in the Charter. Plaintiffs essentially are asking this court to interpret and define *1326 the powers of the Parish President as set out in the Charter and find that he exceeded them. The only reference to "powers" in C.C.P. arts. 3901 and 3902 relates to corporations.
C.C.P. art. 3901 contemplates a challenge to (1) the authority of one to claim or hold a public office; (2) the authority of one to claim or hold an office in a corporation; and (3) the authority of a corporation to exercise certain powers. The article makes no mention of a challenge to the exercise of powers by one lawfully holding public office. C.C.P. art. 3902 provides for remedies when (1) the court finds that a person is holding or claiming a public or corporate office without authority; and (2) the court finds that a corporation is exceeding its powers. A court is not authorized to issue a remedy under quo warranto relating to the exercise of powers by one lawfully holding public office.
Plaintiffs have a remedythe filing of a motion for declaratory judgment. They have no remedy in quo warranto.

MANDAMUS
The trial court also dismissed plaintiffs' petition for mandamus. Mandamus is provided for by La.C.C.P. arts. 3861-3866. C.C.P. art. 3861 defines mandamus and states:
Mandamus is a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864.
"A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law." C.C.P. art. 3863. It "may be issued" (1) "in all cases where the law provides no relief by ordinary means or" (2) "where the delay involved in obtaining ordinary relief may cause injustice; ..." C.C.P. art. 3862. Bd. of Com'rs of Lafourche Basin Levee Dist. v. Bd. of Com'rs of Atchafalaya Basin Levee Dist., 340 So.2d 600 (La.App. 1st Cir.1976). Mandamus is an extraordinary remedy which is to be used only sparingly to compel the performance of a ministerial duty that is "clearly" required by law. City of Shreveport v. Stanley, 446 So.2d 839 (La. 2d Cir. 1984), writ denied, 450 So.2d 956 (La.1984). The law provides for relief to plaintiffs through a petition for declaratory judgment and injunctive relief. La.C.C.P. arts. 1871-1883 and La.C.C.P. arts. 3601-3613. Therefore, the trial court could have properly issued a writ of mandamus only if there was a showing that the delay involved in obtaining ordinary relief might cause injustice. Plaintiffs have made no affirmative showing that the delay involved in obtaining relief may cause injustice. However, even assuming for the sake of argument that such injustice could have occurred, for the following reasons we believe the trial court correctly denied the petition for mandamus.
A writ of mandamus will not issue in a doubtful case. City of Shreveport v. Stanley, supra. In their brief on appeal, plaintiffs claim they sought "very specific relief via a writ of mandamus "ordering Mr. Petrovich to abide by the Charter, to refrain from supervising or controlling employees of the [Port] District, and to refrain from directing expenditures for the [Port] District." (Emphasis added.) A writ of mandamus is issued to "compel the performance" of a ministerial duty. By definition, a writ of mandamus is not properly directed to compel a public officer to "refrain" from doing an act. Injunctive relief would be the proper remedy. Though injunctive relief is an ordinary proceeding, and even assuming that a delay might result in injustice, a court is not thereby granted license to grant injunctive relief in the guise of a writ of mandamus.
Insofar as issuing a writ of mandamus ordering Mr. Petrovich to "abide" by the Charter, it would be a vain act without a precise declaration of what exactly he was being ordered to abide by. Both sides are aware that they are bound by the Charter. The question is what does the Charter mean? The Charter provisions relating to the apportionment of control over the Port District and its employees between the Parish President and the Council, or lack thereof, conflict somewhat. The facts and circumstances of this case militate against a writ of mandamus as a proper remedy. The nature of the dispute between the Parish President and *1327 the Council is evidence itself that the duties of the Parish President as characterized by plaintiffs are not "clearly" required by law. If the alleged duty is not clearly required by law a writ of mandamus should not issue. See City of Shreveport v. Stanley, supra. The facts and circumstances of this case present a "doubtful" case not warranting the issuance of a writ of mandamus. Id.
Considering all of the facts and circumstances of this case, we are unable to say that the trial court erred in denying and dismissing plaintiffs' petition for mandamus.

PUBLIC RECORDS LAW
Defendant claims the trial court erred in denying his exception of no right of action to plaintiffs' assertion that he violated the Louisiana Public Records Law, La.R.S. 44:1 et seq. Six council members each filed forty-nine requests with Mr. Petrovich for public records pursuant to R.S. 44:1 et seq. None of the individual council members are named plaintiffs in this action. Rather, the Council as a body is named as a plaintiff. Defendant argues that the Council cannot bring an action for enforcement of a public records request made by another party. The exception of no right of action was discussed by this court in Wonycott v. Wonycott, 579 So.2d 506 (La.App. 4th Cir.1991) in which we stated:
[A]n exception of no right of action addresses itself to whether the party it is asserted against has any interest in enforcing judicially the right alleged against the mover. La.C.C.P. arts 681; 927. Meche v. Arceneaux, 460 So.2d 89 (La.App. 3d Cir.1984). The essential function of the exception is to provide a threshold device which terminates suits brought by one who has no interest in enforcing judicially the right asserted. Lambert v. Donald G. Lambert Construction Co., 370 So.2d 1254 (La.1979); Thomas v. State, 545 So.2d 632 (La.App. 4th Cir.1989).
In order to prevail on an exception of no right of action a defendant must show that the plaintiff does not have an interest in the subject matter of the suit or the legal capacity to proceed with the suit. Moyers v. Altmann, 594 So.2d 6 (La.App. 3d Cir.1992).
The public records requests were made by the council members in their capacity as individual members of the public, not as council members. There was no mention in the requests that the six council members were acting in their official capacity as council persons. One of the requesters, Councilman Jerry Hodnett, testified at trial of this matter that he filed his requests as an individual or a person of the age of majority.
La.R.S. 44:31 provides that "any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record." (Emphasis added). Defendant also cites R.S. 44:35(A) which provides in pertinent part that "[a]ny person who has been denied the right to inspect or copy a record under the provisions of this Chapter... may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney's fees, costs and damages as provided for by this Section...." (Emphasis added). R.S. 44:35(E) provides for the award of damages, attorney's fees and other costs of litigation to a "requester" under certain circumstances.
The named plaintiffs in this lawsuit, the Council and the Port District, are not requesters. Jerry Hodnett was an individual requester; Sullivan Vullo was an individual requester; Benny Rouselle was an individual requester; Ernest Johnson was an individual requester; Germaine Curley was an individual requester; and Michael Mudge was an individual requester. None of these individuals was a named plaintiff in this lawsuit. Each of these individuals would have had separate and distinct rights of action to bring suits for enforcement of the Public Records Law and for attorney's fees, damages and litigation costs. The "Council" and the "Port District" have no such right.
The trial court erred in failing to sustain defendant's exception of no right of action to the suit for enforcement under the Public Records Law.
In its reasons for judgment the trial court found that Mr. Petrovich was the chief executive officer of the Port District, that the Parish President had no legislative power or function, and that the Parish Council had no *1328 executive power over either the Parish or the Port District. We hold that those findings have no force or effect in law. Those findings were in the nature of a declaratory judgment which exceeded the scope of relief requested by plaintiffs' in this summary proceeding. The trial court's denial of the petition for writs of quo warranto and mandamus was proper for the previously stated reasons, not because of those findings by the trial court.
Our disposition as set forth above renders moot any consideration of the other assignments of error raised by plaintiffs and defendant, including those relating to the trial court's finding of fact as to "reasonable tranquility."
For the foregoing reasons, we reverse the judgment of the trial court insofar as it found that defendant Luke Petrovich violated the Louisiana Public Records Law. We affirm the judgment of the trial court in all other respects.
AFFIRMED IN PART; REVERSED IN PART.