PAUL A. BONIN, Judge.
|/The district judge issued a writ of quo warranto directed to Marie Riccio, an attorney, which ordered her to hand over mail in her possession which belonged to Camillus Specialty Hospital, L.L.C., imposed a continuing obligation upon her to turn over similar items of mail in the future and to sign “any papers necessary to effectuate any transfer of property of Camillus Specialty Hospital, L.L.C., to Mr. Fritschen[, the purported manager of Camillus]”.
Ms. Riccio appeals the judgment, arguing first that the writ is not properly directed to her in her capacity as an attorney for a person or entity whose interests are adverse to the plaintiffs and second that the relief ordered by the court exceeds its legal authority to summarily mandate or compel those actions.
The writ of quo warranto is an extraordinary remedy. Because, as the matter finds itself here, the parties requesting the writ and Ms. Riccio now agree that as a matter of fact Ms. Riccio is neither an officer of Camillus Specialty Hospital, L.L.C. nor someone who ever claimed to be an officer of the limited liability company, we conclude on de novo review that judgment granting the writ of quo | ¡.warranto directed to Ms. Riccio was improvidently issued, and, accordingly, we reverse, recall, and vacate the writ.
The relief which was ordered mandating or compelling certain actions by Ms. Riccio is not available under the writ of quo warranto. But the plaintiffs argue that the relief was authorized pursuant to their request for a mandatory injunction. Ms. Riccio counters the district judge did not and, in the absence of a trial on the merits, could not issue a mandatory injunction. We, however, pretermit discussing or deciding the mandatory, or compulsory, aspects of the eomplained-of judgment because they are moot in light of these undisputed posi-judgment facts: 1) Ms. Riccio has complied with the judgment by delivering the mail to Mr. Frit-schen; 2) Ms. Riccio has not sought the return of the mail in these proceedings; and, 3) the plaintiffs have informed us that no further documents are needed from Ms. Riccio and that there will be no documents for Ms. Riccio to sign at any time in the future.
We now explain our ruling in more detail.
I
We begin by discussing briefly the background facts first and then this matter’s procedural history.
A
The facts underlying this matter concern numerous complex, convoluted, and hotly disputed commercial transactions concerning the ownership of Camillus, a limited liability company which owned the license to operate a failing, debt-ridden long term acute care hospital. These underlying disputes are not wholly | ¡¡germane to the issues before us today, and no part of our decision is dependent upon their resolution. We must, nevertheless, briefly recount the underlying facts for purposes of context.
The plaintiffs are Camillus and CCSH Creditor Protection Corporation. The ownership of the membership interest in Camillus is disputed. CCSH is a corporation which was apparently formed for the purpose of acquiring ownership of all the outstanding membership interest in Camil- *290 lus. The sole defendant is Ms. Riccio who represents Charles Matthews who, Ms. Riccio reports, claims to be the sole member of Camillus or the owner of the membership interest.
The plaintiffs assert that in August 2012, Camillus’ parent limited liability company, whose manager is Dan Daigle, sold on credit all of its membership interest in Camillus to Lazarus Health Care, L.L.C., whose manager is Mr. Matthews. The note was secured by the membership interests in Camillus. In December 2012, Camillus assigned the note with security to plaintiff, CCSH Creditor Protection Corporation, which, according to Ms. Riccio, is owned by Mr. Daigle and formed specifically to reacquire Camillus. CCSH’s president is James Fritschen, a business associate of Mr. Daigle. The plaintiffs assert that Lazarus failed to timely pay the note. There was a — now disputed — creditor’s sale of Camillus in January, 2013 at the office of plaintiffs’ attorneys, where CCSH purchased the membership interest in Camillus. CCSH then removed Mr. Matthews as manager of Camillus and appointed Mr. Fritschen to be the new sole manager.
Lin the meantime, Ms. Riccio had been hired in September 2012 to represent Camillus in connection with an eviction proceeding and continued to represent Camillus until March 2013. She was hired by Mr. Matthews, with the alleged assent of Mr. Daigle, who was named in the eviction proceeding as a personal guarantor of a portion of the rent.
Ms. Riccio asserts that in December 2012 Mr. Fritschen asked her on several occasions to send her assistant to Mr. Dai-gle’s offices to collect mail which belonged to Camillus. Ms. Riccio complied and her assistant collected Camillus’ mail and took it to Ms. Riccio’s office. Beginning in January 2013, and again in March 2013, Camillus’s “new” membership interest asked Ms. Riccio to deliver the mail she was holding to Mr. Fritschen or Mr. Dai-gle. Maintaining that the January 2013 creditor’s sale was a sham and that Mr. Matthews, her client, was still the rightful owner and manager of Camillus, Ms. Ric-cio refused.
B
Plaintiffs then filed a petition for writ of quo warranto and a request for a preliminary injunction on April 18, 2013. The plaintiffs’ petition, specifically, sought an order to direct Ms. Riccio to show by what authority she claimed to hold a corporate office in Camillus and to compel Ms. Riccio by a mandatory injunction to return the Camillus mail held at her office. Ms. Ric-cio responded by filing exceptions of no right of action, no cause of action, lack of personal jurisdiction, and improper join-der. Ms. Riccio also objected to the proceedings on the grounds that Camillus’ present attorneys must be recused (or disqualified) because of a | r,conflict of interest and on the grounds that Mr. Fritschen lacks capacity to act on behalf of Camillus. The district judge conducted hearings on plaintiffs’ petition on May 24 and 31, 2013. The parties were allowed to introduce evidence and testimony. Instead of arguing that Ms. Riccio had usurped one of Camil-lus’ corporate offices, the plaintiffs asserted that the writ of quo warranto should be granted because Ms. Riccio was exercising corporate powers. Ms. Riccio denied having any pretense to corporate office with Camillus and instead asserted: “My client, Charles Matthews, alleges that he is the owner of the mail because he is the owner of Camillus, and this is Camillus’ mail.”
At the close of the May 31, 2013 hearing, the district judge ruled in favor of the plaintiffs and ordered Ms. Riccio to return the mail to Mr. Fritschen. The resulting *291 judgment declared that Ms. Riccio “does not have any right or authority to act on behalf of Camillus Specialty Hospital, L.L.C. and does not hold any office within that company.” The judgment contains no decretal language granting specifically the plaintiffs’ request for a mandatory injunction, although it directs Ms. Riccio to return the mail to Mr. Fritschen, places a continuing obligation upon Ms. Riccio to forward to Mr. Fritschen any property of Camillus that she may acquire in the future, and compels her to “sign any papers necessary to effectuate any transfer of property of Camillus Specialty Hospital, L.L.C. to Mr. Fritschen.” Ms. Riccio returned the mail to Mr. Fritschen on June 10, 2013, and filed a petition for devolutive appeal on June 20, 2018.
_kH
In this Part we explain why we reverse the district judge’s granting of the plaintiffs’ request for a writ of quo warranto. We begin our analysis by first discussing the law applicable to writs of quo warran-to, and then analyze the district court’s judgment in light of these principles.
A
The writ of quo warranto directs “an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers.” La. C.C.P. art. 3901.
Here, of course, we are considering office in a limited liability company, but note that Article 3901 is equally applicable or available to limited liability companies. See La. R.S. 12:1303 A (“All limited liability companies ... shall have the powers, rights, and privileges provided for a corporation organized under the Business Corporation Law”).
The writ of quo warranto is narrow in scope and is to be given only a limited use, which is to prevent usurpation of office or of powers. See Menard v. City of New Orleans Enforcement and Hearings Bureau, 12-1161, p. 6 (La.App. 4 Cir. 1/18/13), 108 So.3d 340, 344. In a quo warranto action, the individual defendant has the burden of showing by what authority he or she claims to hold office. Id., p. 4,108 So.3d at 343.
The relief to be granted by a writ of quo warranto is also limited. When a court finds that a person is holding or claiming office (whether public or corporate) |7without authority, the judgment shall forbid him from doing so. See La. C.C.P. art. 3902. A court, in such a situation, may also declare who is entitled to the office and may direct that an election be held when necessary. Id. When a court finds that a corporation is exceeding its powers, the judgment shall prohibit it from doing so. Id. Given the narrow, limited nature of the writ, the provisions of Article 3902 set out the exclusive means of relief allowable on an application for a writ of quo warranto. See Plaquemines Parish Council v. Petrovich, 629 So.2d 1322, 1326 (La.App. 4 Cir.1993); Hyde v. Hyde, 590 So.2d 727, 732 (La.App. 3 Cir.1991).
B
Having reviewed the record, we conclude that the district judge improvidently granted the plaintiffs’ petition for writ of quo warranto.
As we earlier stated in the introduction, no one argued that Ms. Riccio was holding an office in Camillus. Ms. Riccio, throughout the entirety of these proceedings, has likewise disclaimed any pretense to holding any type of corporate office in Camil-lus. She has, however, maintained consistently by way of pleadings, oral statements made during the hearings to the district *292 judge, and affidavits introduced into evidence that her actions were undertaken solely in the capacity as retained counsel to both Camillus and Mr. Matthews. Indeed, the plaintiffs do not now claim that Ms. Riccio usurped one of Camillus’ corporate offices.
IsRather, the plaintiffs’ justification for the issuance of the writ of quo warranto is their assertion that Ms. Riccio was improperly exercising corporate powers. The district judge, also noting that Ms. Riccio does not hold corporate office, nevertheless granted the writ after concluding that Ms. Riccio “does not have any right or authority to act on behalf of Camillus.”
There is, accordingly, no dispute as to whether Ms. Riccio had usurped one of Camillus’ corporate offices — it is clear that she did not. Thus, we review the complained-of quo warranto judgment de novo, as a question of law, and afford no deference to the district judge’s legal conclusions.
The controversy actually concerns Ms. Riccio’s authority to possess, as legal counsel, Camillus’ mail. The writ of quo warranto was erroneously granted in this case because a court is not authorized to issue a remedy under quo warranto relating to the individual exercise of alleged corporate authority. We first note that the clear language of Article 3901 limits a court’s review of scope of authority questions to whether a given corporation has authority to exercise certain powers. Similarly, in both Menard and Petrovich, we clarified the challenge of a writ of quo warranto contemplated by Article 3901. In Menard, the plaintiff sought a writ of quo warranto relating to the scope of several appointed city government officials to issue stop work orders. In Petrovich, a writ of quo warranto was sought relating to the scope of the parish president’s powers over the control and operation of the parish Port District.
|9We stated in Petrovich that Article 3901 contemplates a challenge to (1) the authority of one to claim or hold a public office; (2) the authority of one to claim or hold an office in a corporation; and (3) the authority of a corporation to exercise certain powers. 629 So.2d at 1326. We noted that Article 3901 makes no mention of a challenge to the exercise of powers by one lawfully holding public office. Id. Article 3902, we declared, only provides for remedies “when (1) the court finds that a person is holding or claiming a public or corporate office without authority; and (2) the court finds that a corporation is exceeding its powers.” Id. We then held that “[a] court is not authorized to issue a remedy under quo warranto relating to the exercise of powers by one lawfully holding public office.” Id. Likewise, in Menard we concluded, after citing to Petrovich, that the plaintiffs request in that case “went beyond a challenge to the authority of one who claims or holds a public office.” 12-1161, p. 7,108 So.3d at 345.
While the plaintiffs’ petition here seeks to test by what authority Ms. Riccio exercises certain corporate, as opposed to governmental, powers, we can see no reason why our conclusions in both Menard and Petrovich would not be applicable to the controversy before us today. Accordingly, we conclude that it was legal error for the district judge to issue the writ of quo warranto judgment in this case because courts cannot, within the confines of a quo warranto action, issue a remedy relating to the individual exercise of alleged corporate authority. Therefore, the judgment granting the writ of quo warranto must be reversed, recalled, and vacated.
JifiHI
Lastly, we address Ms. Riccio’s request for a reversal of the compulsory *293 aspects of the eomplained-of judgment. Again, as we stated in the introduction, we pretermit deciding the mandatory, or compulsory, aspects of the complained-of judgment. Developments after the rendition of the judgment have rendered the'mandatory or compulsory provisions of the judgment moot and we will not decide moot issues.
Counsel for plaintiffs has notified us in writing that: 1) Ms. Riccio has complied with the judgment by delivering the mail to Mr. Fritschen; 2) no further documents are needed from Ms. Riccio; and 8) there will be no documents for Ms. Riccio to sign at any time in the future. Additionally, Ms. Riccio has not sought the return of the mail in these proceedings.
A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief. See Church Mut. Ins. Co. v. Dardar, 12-0659, pp. 6-7 (La.App. 4 Cir. 6/26/13), 119 So.3d 967, 972. It is well established that appellate courts will not render advisory opinions from which no practical results can follow. See United Teachers of New Orleans v. Orleans Parish School Board, 355 So.2d 899, 900 (La.1978). As a result, Courts have established the rule that moot questions will not be considered on appeal. See Schwegmann Family Trust No. 2 v. White III, L.L.C., 11-0611, p. 13 (La.App. 4 Cir. 9/30/11), 76 So.3d 1228, 1236. So strong is this prohibition that an appellate Court, as a matter of judicial economy, has a right to consider the possibility of mootness on its own motion and 1 nto dismiss the appeal if the matter has become moot. See, e.g., Whitney Nat. Bank of New Orleans v. Poydras Center Associates, 468 So.2d 1246, 1248 (La.App. 4 Cir.1985). Although the district court’s judgment did not specifically grant the plaintiffs’ request for injunctive relief, the remedies provided in the judgment tracked the requests made by the plaintiffs with respect to their request for injunction. In cases concerning injunctive relief, it is clear that when the activity which a plaintiff seeks to enjoin has already occurred during the pendency of the suit, the matter is moot and the propriety of the trial court’s action in denying or granting the injunction will not be considered by the reviewing court. See City Stores Co. v. Gervais F. Favrot Co., Inc., 315 So.2d 370 (La.App. 4th, Cir.1975).
This rule was succinctly stated by the Supreme Court in Verdun v. Scallon Brothers Contractors, Inc., 263 La. 1073, 270 So.2d 512 (1972). In that case an injunction was sought to prevent a contractor from trespassing on plaintiffs property to remove soil for the purpose of repairing an adjacent levee. By the time the Supreme Court considered the matter, all construction activities had ceased. The Supreme Court dismissed the appeal stating: “In such circumstances, the matter is now moot, as this court will not review a case where only injunctive relief is sought when the need for that relief has ceased to be a justiciable issue.” Id., 270 So.2d at 513. An injunction, the Court noted, may be used “to prevent but not to correct the wrong; it cannot be employed to redress an alleged consummated wrong or undo what has already been done.” Id. While we do not dismiss this matter as moot— because we reverse, recall, and vacate the judgment granting theJjjwrit of quo war-ranto — we will not address Ms. Riccio’s assignments of error with respect to the mandatory aspects of the district court’s judgment because these issues are now moot.
DECREE
The judgment granting the writ of quo warranto directed to Marie Riccio, attorney, is reversed, recalled, and vacated. All *294 costs of these proceedings are taxed to the appellees. See La. C.C.P. art. 2164.
REVERSED AND RENDERED.